## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher Odom, | ) | C/A No. 5:15-cv-01951-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Governor Nikki Haley; | ) | |
| Mayor Joe Riley; | ) | |
| Mayor Keith Sumney; | ) | |
| Judge Garfinkel; | ) | |
| Judge Kristi Harrington; | ) | |
| Judge Jefferson; | ) | |
| State Attorney General Alan Wilson; | ) | |
| PD Ashley Pennington; | ) | |
| Prosecutor Scarlet Wilson; | ) | |
| Michael Grant; | ) | |
| Dollar Tree; | ) | |
| MUSC; | ) | |
| Dr. Stephanie Montgomery; | ) | |
| CARTA Bus Co.; | ) | |
| CARTA Bus Wheelchair Lift Manufacturer; | ) | |
| CARTA Bus Insurer; | ) | |
| CARTA Bus Driver John; | ) | |
| Officer Cherry; | ) | |
| Officer Ho; | ) | |
| Unknown Officer *who was with Officer Ho on Dec. 16, 2014*; | ) | |
| Officer Tugya; | ) | |
| Charleston Police Department; | ) | |
| City of North Charleston Police Department; | ) | |
| City of Charleston Taxpayers; | ) | |
| SC State Taxpayers; | ) | |
| County of Charleston Taxpayers; | ) | |
| City of North Charleston Taxpayers; | ) | |
| CHAMPUS; | ) | |
| Sheriff Al Cannon; | ) | |
| FNU LNU Female Victim Advocate; | ) | |
| FNU LNU Doctors from MUSC who approved placement of Plaintiff in SCDMH; | ) | |
| Officer Richardson, | ) | |
| | ) | |
| Defendants. | ) | |

This is a civil action filed pro se by a person detained at a local detention center. Pursuant

to 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is

1

authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

I.     Factual Background

In the three-page Complaint, ECF No. 1, and eight pages of supplemental pleadings, ECF Nos. 1-2, 1-3, 1-5, filed in this case and now under review, Christopher Owens ("Plaintiff") attempts to state claims for damages against many of the same persons and entities he has unsuccessfully attempted to sue previously in one or more of the 27 non-habeas civil actions he has instituted in this court since December 1998. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'").[1] Some of his allegations are repetitive of allegations made in previous cases; however, Plaintiff's Complaint also includes some allegations that appear to be based on situations that arose at some time after he filed his most recent civil action in this court, which was dismissed on October 17, 2014. Plaintiff's appeal from that dismissal concluded on April 2, 2015. *See Odom v. South Carolina*, No. 5:14-cv-02441-RMG (D.S.C.), *appeal dismissed*, 599 F. App'x 79 (4th Cir. 2015) (Appeal No. 14-7645) (per curium). In his

---

[1] Plaintiff did not provide a caption on his Complaint, nor did he provide a full listing of all Defendants anywhere in the body of any of his pleadings. To make up a listing of Defendants for the docket of this case and for the caption of this Report, the court was required to search for names through all pages of Plaintiff's handwritten Complaint and supplemental pleadings. Defendants listed in the caption of this Report appear to be the persons and entities that Plaintiff intends to sue in this case.

first supplemental pleading, Plaintiff asks this court "re-open all cases listed in U.S.C.A. # 14-7645." ECF No. 1-2.[2]

To the extent that Plaintiff's handwriting can be deciphered, it appears that he is attempting to make eight separate claims for relief in this case. In his original Complaint, Plaintiff begins his allegations in support of most of those claims with the word "complaint." Compl. 1-2, ECF No. 1. Plaintiff's three supplemental pleadings name two additional Defendants (the Female Victim Advocate and Officer Richardson) and contain additional factual allegations in support of some of the original "complaints." ECF Nos. 1-2, 1-3; 1-5. For ease of reference and to avoid confusion with the Complaint currently under review, each of Plaintiff's eight "complaints" will be referred to as "claims." A general summary of each of Plaintiff's claims, as supplemented, follows.

*Claim One*: Plaintiff alleges that Defendants MUSC (the Medical University of South Carolina), Dr. Stephanie Montgomery, CARTA (Charleston Area Regional Transportation Association) Bus Co., CARTA Wheelchair Lift Manufacturer, CARTA Bus Insurer, and CARTA Bus Driver John are liable to him for "negligence" and "malpractice" and "gross negligence." ECF No. 1. Plaintiff alleges that on September 18, 2012, he was placed in a wheelchair and released from MUSC by Dr. Montgomery while Plaintiff was under the influence

---

[2] Review of the Fourth Circuit's opinion in that appeal shows only one "case" listed—the case that was the subject of the appeal: 5:14-cv-02441-RMG. The order ruling on the report and recommendation dismissed Plaintiff's complaint in its entirety, and the judgment entered on that order officially "closed" the case on October 17, 2014. ECF Nos. 37, 38. The appellate court did not remand the case to this court, and there is nothing in its opinion that directs this court to "re-open" any previously dismissed case. In fact, the Fourth Circuit specifically stated that Plaintiff would have to file "*another complaint* providing factual allegations specifying how the named defendants violated his constitutional rights . . . ." 599 F. App'x at 79 (emphasis added). The pleadings now under review appear to be Plaintiff's response to the Fourth Circuit's direction to "file another complaint," and there is no basis on which this court should "re-open" any of his previously dismissed cases. Accordingly, this Report and Recommendation is based solely on the contents of the pleadings that Plaintiff has filed in this case.

of medication. He alleges that Dr. Montgomery did not give him any instructions about the medication he was on and did not obtain his signature before releasing him. Plaintiff further alleges that when he tried to get on a CARTA bus in the wheelchair and in a medicated state, he was injured. *Id.* Plaintiff alleges that Defendant CARTA Bus Driver John "did not have the wheelchair lift leveled . . ." and that he "rolled backward off the ramp . . . causing Plaintiff back and neck injury [and] concussion." *Id.* Plaintiff alleges that Defendant CARTA Bus Driver John did not report the incident to police and that the CARTA-related Defendants should have had "wheelchair seatbelts/safety belts for wheelchair electric lift ramp . . . ." *Id.* Plaintiff demands $500,000.00 from these Defendants.

*Claim Two*: Plaintiff alleges that on May 3, 2014, he was arrested on a bench warrant by Defendant Officer Cherry. *Id.* Plaintiff alleges that "during arrest Ofc. Cherry allowed civilian to assault Plaintiff back seat of police cruiser." *Id.* Plaintiff further alleges that he was "assaulted while handcuff behind his back sitting in back seat of police car/cruiser." *Id.* Plaintiff states that he wants to hold Defendants City of Charleston Taxpayers, City of Charleston Police Department, and Officer Cherry "liable for negligence, grossly negligence, assault." Plaintiff "[d]emand $100,00.00 dollars to make Plaintiff whole again." *Id.*

*Claim Three*: Plaintiff alleges that on December 16, 2014, he was stopped by Defendant Officer Ho and then turned over to Defendant Unknown Officer, who transported Plaintiff to the Charleston County Detention Center because of an outstanding bench warrant. *Id.* Plaintiff alleges that Defendant Officer Ho took Plaintiff's bicycle and driver's license and that, as a result, Plaintiff no longer has transportation. *Id.* Plaintiff asserts that both Defendant Officer Ho and Unknown Officer are "liable for replacement of a $250 bicycle and $10 for renewal of drivers license" and for another amount of money (which cannot be determined because of

Plaintiff's writing) for "pain and suffering (punitive damages) for the Defendants has left the Plaintiff without transportation." *Id.*

*Claim Four*: Plaintiff states, verbatim, "On October 29th, 2012 Plaintiff hand deliver (1) 1983 civil action lawsuit at 100 Broad St. Chas. S.C. 29401 "Family Court" Judge Paul Garfinke[l] Plaintiff holds Houston v. Lack 487 at 266 (1988) of case # 95DR1005342 at request documents be amend to this entire notice here." *Id.* at 1.

*Claim Five*: Plaintiff alleges that he holds Defendants City of Charleston Police Department, City of Charleston Taxpayers, S.C. State Taxpayers, County of Charleston Taxpayers, City of North Charleston Police Department, City of North Charleston Taxpayers, and Officer Tugya liable for "(1) false arrest/imprisonment (2) placement in solitary (3) assault by [undecipherable] (4) placement in restraint chair (5) placement in incubator (6) food as weapon (7) placement in S.C.D.M.H. . . . involuntarily (8) children touring at S.A.C.D.C. (N. Chas police assisting exscort." *Id.*

*Claim Six*: Plaintiff alleges that he is suing Defendants Governor Haley; Mayors Riley and Sumney; Judges Garfinkel, Harrington, and Jefferson; State Attorney General Wilson; Public Defender Pennington; and Solicitor Wilson for preventing him from completing a "civil action 95DR1005342 on October 29, 2010" and "allowing Plaintiff to be place in a sicological [sic] asylum 'South Carolina Department of Mental Health' involuntarily and without due process . . . ." ECF No. 1 at 2. Plaintiff also alleges that he is suing Defendant Cannon and the others previously mentioned "for failure to protect the civil rights of Plaintiff allowing Plaintiff to be involuntarily [committed]." *Id.* Plaintiff asks for "7 billion dollars" from these Defendants. *Id.* As part of his allegations on this "complaint," Plaintiff references one of his previous habeas corpus cases: "3:11-cv-2713" and a previous appeal to the Fourth Circuit Court of Appeals:

"U.S.C.A. case #14-7645." ECF No. 1 at 2. In his first supplemental pleading, Plaintiff adds Defendant Tugya to the list of persons and entities that he says "are responsible liable, negligent, gross negligent, [malicious] injury, malpractice . . . , punitive damages due to Plaintiff (injuries [cruel and unusual punishment] deliberate indifference . . . ." ECF No. 1-2. Plaintiff alleges that he was "place in S.C.D.M.H. . . . to discredit Plaintiff and Plaintiff's position of not guilty of case # K380534 and also to discredit claim(s) filed in U.S.D.C. 3:11-cv-605, 3:11-cv-606." *Id*.[3]

*Claim Seven*: Plaintiff lists the names of Defendants Grant and Dollar Tree, provides an address, and draws an arrow pointing to the words "false arrest for strong arm robbery . . . case # 201010201892." ECF No. 1 at 2. Plaintiff then writes "[d]emand $75,000 dollars in reparation for defamation of character & false imprisonment." *Id*. In his supplemental pleadings, Plaintiff alleges that he is suing Grant and Dollar Tree for punitive damages in the amount of $150,000.00. ECF No. 1-5 at 3. Plaintiff asserts that Defendant Female Victim Advocate is liable to him for "defamation and slander" because she allegedly appeared at an April 29, 2015 bond hearing in a pending criminal action in Charleston County, which he calls "warrant 2015A1010201892," and demanded that Plaintiff receive punishment. ECF No. 1-1 at 1.[4]

---

[3] Both 3:11-cv-605 and -606 were filed on March 18, 2011, when Plaintiff was detained at the Charleston County Detention Center. Each appears to have been filed to challenge certain conditions of Plaintiff's confinement at the detention center, and both were dismissed by this court on April 28, 2011 because Plaintiff did not respond to the initial orders issued in the cases.

[4] Review of available on-line records of the Charleston County Clerk of Court discloses that Plaintiff currently has one criminal matter pending against him. The case number for that pending action is the same number as that listed by Plaintiff, the filing date is shown as April 29, 2015, and the pending criminal charge in that case is listed as "0137-Robbery/ Common law robbery, strong arm robbery." The records do not disclose a "warrant # K380533." It is possible that the warrant was for Plaintiff's arrest for the pending charge, but the on-line records do not make that clear. *See* Charleston County Clerk of Court, http://jcmsweb.charlestoncounty.org/PublicIndex/CaseDetails.aspx?County=10&CourtAgency= 10001&Casenum=2015A1010201892&CaseType=C (last consulted May 27, 2015).

Plaintiff also supplementally alleges that Defendant Officer Richardson is liable to him for compensatory and punitive damages for "negligence" "false arrest" and "defamation and slander" and "cruel and unusual punishment, malicious prosecution and deliberate indifference of case 2015A1010201892." ECF No. 1-5 at 2.

*Claim Eight*: Plaintiff demands "$16 million in damages from false incarceration warrant # K380534, warrant # K380533 from October 12, 2010 thru making Plaintiff whole again, from causing Plaintiff to have pre-existing condition." ECF No. 1 at 3. Plaintiff alleges that Defendant MUSC, an unnamed doctor "whom authorize placement of Plaintiff in S.C.D.M.H.," and Defendant CHAMPUS are responsible for having Plaintiff involuntarily committed, and that Defendant Tugya "assaulted Plaintiff on date of warrant K380534 physically and physically with chemical spray." *Id*. Plaintiff asserts a "demand [to] re-open of case K380534, U.S.D.C. 3:11-cv-2715) . . ." *Id*. Plaintiff also references previous habeas case No. 3:11-cv-2713 and appeal No. 14-7645 in his allegations about this "complaint." ECF No. 1 at 3. In supplemental allegations, Plaintiff alleges that Defendant Officer Tugya "fabricated" a warrant ("warrant # K380534") that resulted in "false imprisonment" and "malicious prosecution." ECF No. 1-5 at 1.[5] He asserts that a hearing was "in session" in a case numbered "# 95DR1005342" on "October 29, 2010," and that "warrant # K380534, Ofc. Tugya should not supercede an open court session . . . ." ECF No. 1-5 at 4.[6] Plaintiff continues that "due too" Defendant Tugya's fabrication, Plaintiff was "rape by

_____

[5] Review of available on-line records of the Charleston County Clerk of Court discloses that "Warrant K380534" charged "0256-Assault on Police Officer Whil" and that it was "disposed" by "Nolle Prosequi" on January 19, 2012. Charleston County Clerk of Court, http://jcmsweb.charlestoncounty.org/PublicIndex/CaseDetails.aspx?County=10&CourtAgency=10001&Casenum=K380534&CaseType=C (last consulted May 27, 2015).

[6] The available on-line records of the Charleston County Clerk of Court disclose only that case "# 95DR1005342 is a Family Court matter involving "child support" that was filed against Plaintiff by the South Carolina Department of Social Services in on November 13, 1995. The docket report for that case shows six different "ORDER[S] FROM BENCH WARRANT

S.C.D.M.H. employees/nurses/doctors and orderlies" when they "pulled Plaintiff pants down an injected (unk) chemical substance in Plaintiff buttocks." *Id*. at 1.

II.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc.*

HEARING[S]," beginning on October 29, 2010. The other orders are dated November 1, 2010; January 24, 2012; May 13, 2014; December 17, 2014; December 19, 2014. The records show that a "CONSENT ORDER" was entered in the case on January 28, 2015 and, apparently, the case was dismissed on May 1, 2015 ("ORDER TO DISMISS BOOKEEPING RTSC"). Charleston County Clerk of Court, http://www3.charlestoncounty.org/docs/CaseProfiles/DR101995005342.html (last consulted May 28, 2015). The Clerk's on-line records do not permit a viewer to access the content of the listed Family Court orders, and Plaintiff has not provided this court with copies of any of the orders, thus, this court cannot determine what or who the order dated October 29, 2010 involved.

*Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

III.    Discussion

A.    Plaintiff's Previous Litigation

This is the 28th non-habeas civil action Plaintiff has filed in this court since December 1998. Ten of those of actions have been dismissed without service on the defendants because of Plaintiff's failure to respond or adequately respond to initial orders: Nos. 5:14-2441-RMG; 5:13-2632-RMG; 3:11-1488-RMG; 3:11-1082-RMG; 3:11-1081-RMG; 3:11-1080-RMG; 3:11-1053-RMG; 3:11-901-RMG; 3:11-606-RMG; 3:11-605-RMG. Twelve of those actions were summarily dismissed without service on any of the defendants named by Plaintiff because the claims made were found to be frivolous or the allegations in the complaints failed to state plausible claims against the named defendants: Nos. 3:12-18-RMG; 3:11-365-RMG; 2:10-2376-RMG; 3:10-1818-RMG; 3:09-3271-PMD; 3:09-1941-PMD; 3:09-629-PMD; 2:08-2660-PMD; 8:07-325-PMD; 2:07-247-PMD; 3:05-2725-PMD; 2:00-1044-PMD. Only five of those 27 non-habeas civil actions were deemed sufficiently factually detailed to require service on the defendants, Nos. 3:07-343-PMD; 3:06-3417-PMD; 3:05-1611-PMD; 2:99-1449-DCN; 2:98-3528-PMD. Of the five served cases, four terminated in summary judgments for the defendants and one terminated by dismissal on the defendant's motion. Plaintiff has also submitted four unsuccessful habeas corpus actions to this court during the same time period: Nos. 3:12-101-RMG (§ 2241 petition seeking release from pretrial custody; dismissed for lack of exhaustion of state remedies); 3:11-2713-RMG (seeking release from involuntary commitment to state Department of Mental Health ("SCDMH") for competency examination; released after service);

3:11-903-RMG (seeking release from custody on a family court judgment or bench warrant; dismissed for failure to respond to initial order); 3:99-1616-PMD (challenging a Charleston County conviction; dismissed for lack of exhaustion of state remedies). Thus, it may be said that Plaintiff has considerable experience as a litigant in this court, and that this court has expended a considerable amount of its judicial resources to address Plaintiff's many submissions.

In connection with his past litigation, this court has often informed Plaintiff that any complaint he files must contain sufficiently understandable and detailed factual allegations to support the claims that he attempts to make against any defendant, that he cannot simply refer to previous cases that he filed to take the place of sufficient factual allegations supporting a claim, that any such claims must be of the type over which this court can exercise its limited subject-matter jurisdiction, and that neither negligence claims against fellow South Carolina residents nor civil-rights claims against judges or court officials based on their performance of judicial functions may considered under the court's subject-matter jurisdiction. *See, e.g.,* Reports and Recommendations issued in Nos. 5:14:2441-RMG (ECF No. 28); 5:13-2632-RMG (ECF No. 24); 2:10-2376-RMG (ECF No. 7); 3:10-1818-RMG (ECF No. 7); 8:09-629-PMD (ECF No. 15); 2:08-2660-PMD (ECF No. 7); 3:07-325-PMD (ECF No. 6); 3:05-2725-PMD (ECF No. 9). Moreover, this court has also previously informed Plaintiff that he cannot bring claims against persons or entities based on their participation in past criminal actions in which Plaintiff was convicted and the conviction was never overturned, *see, e.g*., Nos. 3:12-18-RMG (ECF No. 8); 3:10-1818 (ECF No. 7); 3:09-3271 (ECF No. 6); 2:07-247-PMD (ECF No. 7); 2:00-1044-PMD (ECF No. 4). Plaintiff was also previously informed that he cannot bring constitutional claims in this court against persons based on their participation in currently pending state-court cases, *e.g.* Nos. 3:12-101-RMG (ECF No. 7); 3:11-2713-RMG (ECF No. 30), or in finalized state-court

cases in which Plaintiff was the losing party if success on the asserted claims would require this court to review and, possibly, overturn rulings made by the state court, *e.g.* 3:09-3271-PMD (ECF No. 6). However, despite having received such information about claims improperly raised in this court, Plaintiff continues to assert many of the same improper claims in the Complaint now under review. Plaintiff has been given more than sufficient opportunity to state plausible claims before this court and it appears clear that, at least insofar as several of his "complaints" in this case are concerned, he has proven himself unable to adequately plead plausible claims that may be considered by this federal court.

B.     Legally barred claims

Plaintiff's allegations about his September 18, 2012 release from MUSC and his subsequent injuries from an accident that occurred when he tried to board a CARTA bus (Claim One) raise only state-law-based negligence and medical-malpractice claims against Defendants MUSC, Montgomery, CARTA Bus Co., CARTA Bus Wheelchair Lift Manufacturer, CARTA Bus Insurer, and CARTA Bus Driver John.[7] Plaintiff does not allege that any of these entities or individuals violated any federal constitutional or other right in connection with their medical care or with Plaintiff's attempts to use public transportation. Further, all of the persons and entities sued under this claim appear to be South Carolina residents, as is Plaintiff. Plaintiff has been told many times that 42 U.S.C. § 1983 does not cover negligence claims. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200-03 (1989) (§ 1983 does not impose liability for violations of duties of care arising under state law (such as those involved in negligence actions)). Plaintiff has also been advised that, in absence of diversity jurisdiction, this

---

[7] This finding that such claims are "raised" by Plaintiff's allegations does not include a finding that the allegations are legally sufficient to state plausible claims if properly presented to a state court for consideration. Any such decision must be made by the state court if Plaintiff decides to submit these allegations against these Defendants in a case filed there.

court cannot consider state-law-based negligence or malpractice claims. *See Cianbro Corp. v. Jeffcoat & Martin*, 804 F. Supp. 784, 788-91 (D.S.C. 1992); *see also Williams v. Univ. of Ala. Hosp. at Birmingham*, 353 F. App'x 397, 398 (11th Cir. 2009). There is no basis for this court to exercise diversity jurisdiction in this case because Plaintiff is a South Carolina resident and most, if not all, Defendants are also South Carolina residents. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 & nn.13-16 (1978); *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). If Plaintiff wishes to sue these persons and entities for negligence and malpractice, he must do so in state court,[8] not in this federal court. Also, Plaintiff should file any negligence and malpractice claims in state court as soon as possible because it appears on the face of the Complaint that applicable South Carolina statutes of limitations could have already run or could do so in the next few months, assuming the alleged date of injury (September 18, 2012) to be the date on which Plaintiff's causes of action accrued. *See, e.g.*, S.C. Code Ann. §§ 15-3-530 (general tort limitations period is three years from the time the cause of action accrued); 15-3-545 (general medical malpractice limitations period is three years); 15-78-110 (South Carolina Torts Claim Act's limitations period is two years if no statutory "verified claim" is filed within one year of the loss (S.C. Code 15-78-80); three years if such claim is filed). Because the jurisdictional deficiencies in Claim One cannot be cured through amendment, Plaintiff's claims against MUSC, Dr. Montgomery, and CARTA Bus Co. and the other CARTA-related Defendants should be dismissed by this court *with prejudice*.[9] *See, e.g., Coleman v. York*

---

[8] Nothing in this Report and Recommendation offers any opinion regarding the potential validity of any claims Plaintiff may file in another court.

[9] This final dismissal will only affect Plaintiff's future § 1983 filings, *i.e.*, claims of federal unconstitutionality arising from the same facts. It will not affect the viability or plausibility of any negligence or medical malpractice claim filed in a South Carolina state court arising from the same facts because this court is only ruling on the facial sufficiency of Plaintiff's Complaint to set forth federal claims. It is not ruling on the merits of any of the

*Cnty. 16th Cir. Judicial Ct.,* No. 0:12-1967-JFA-SVH, 2013 WL 3929809 (D.S.C. July 29, 2013) (finding when pleading deficiency cannot be cured by amendment, dismissal with prejudice is proper); *Singleton v. Warden, Evans Corr. Inst.*, No. 2:12-2504-TLW-BHH, 2012 WL 6674798 (Sept. 18, 2012) (same), *report and recommendation adopted*, 2012 WL 6674552 (D.S.C. Dec. 21, 2012).

Similar problems exist with Plaintiff's Claim Three against Defendants Officer Ho and Unknown Officer. Plaintiff's allegations that these Defendants took his personal property (a bicycle and driver's license) and did not return it do not state a plausible constitutional claim under § 1983 or any other federal law. Because these Defendants are Charleston County law enforcement personnel, these allegations raise state-law-based claims relating to unlawful deprivation of personal property that are compensable under the South Carolina Torts Claim Act, S.C. Code Ann. §§ 15-78-10 through 15-78-220. As a result, even though these Defendants are state actors, Plaintiff's allegations do not state a plausible federal claim because Plaintiff has alternative remedies for the alleged property loss that may be sought in state court. *See Hudson v. Palmer*, 468 U.S. 517, 533, 536 n.15 (1984); *Mora v. Gaithersburg*, 519 F.3d 216, 229-31 (4th Cir. 2008); *Bogart v. Chapell*, 396 F.3d 548, 557 n.7, 561 (4th Cir. 2005) (South Carolina has meaningful post-deprivation remedies of "conversion/trespass to chattels" for personal property loss caused by county employees); *Mack v. Carter*, No. 5:11-588-MGL, 2013 WL 625577, at *4

---

allegations or on any purported negligence or malpractice claims. *See generally Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) ("issue preclusion is more narrowly drawn and applies when the later litigation arises from a different cause of action between the same parties. . . . [i]ssue preclusion operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction in the first litigation'") (internal citations omitted) (quoting from *In re Varat Enters.*, 81 F.3d 1310, 1315 (4th Cir. 1996) and *Montana v. United States*, 440 U.S. 147, 153 (1979)); *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982) (dismissals based on lack of jurisdiction do not have res judicata effect on subsequent cases).

(D.S.C. Feb. 20, 2013) (citing to S.C. Code § 15-69-10 as the South Carolina post-deprivation remedy). Plaintiff needs to pursue any claims against these two Defendants for return of his personal property in state court, not in this federal court. The deficiencies in Plaintiff's allegations against Defendants Officer Ho and Unknown Officer cannot be cured through amendment; therefore, Claim Three should be dismissed with prejudice. *Cf. Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) ("repeated failure to cure deficiencies by amendments previously allowed . . . futility of amendment" justifies denial of amendment); *see also McLeod v. PB Inv. Corp.*, 492 F. App'x 379, 388 (4th Cir. 2012) (denial of amendment proper where amendment would be futile).

As part of his Claim Seven, as supplemented, Plaintiff alleges that Defendants Female Victim Advocate and Officer Richardson are liable to him for "defamation and slander."[10] There is no federal cause of action for defamation or slander. Like negligence and malpractice discussed previously, such claims are state-law based and are not properly raised in federal court in absence of diversity jurisdiction, which is not available in this case. *See Paul v. Davis,* 424 U.S. 693, 697-710 & nn.3-4 (1976); *Ysais v. Richardson*, 603 F. 3d 1175, 1179 (10th Cir. 2010); *Good v. City of Sunbury*, 352 F. App'x 688, 689-90 (3d Cir. 2009); *see also Quint v. Village of Deerfield*, No. 07-C 5413, 2010 WL 675565, at *1 (7th Cir. Feb. 26, 2010). If Plaintiff wishes to sue any Defendant in this case for defamation, he must do so in state court, not in this federal court. Because the deficiencies in Plaintiff's allegations against Defendants Female Victim

---

[10] Plaintiff also adds the phrase "cruel and unusual punishment" at the end of his allegations against the Female Victim Advocate, ECF No. 1-2 at 1, and "false arrest . . . cruel and unusual punishment, malicious prosecution and deliberate indifference . . ." to his allegations against Officer Richardson. These legal conclusions without any supporting factual allegations do not state any plausible federal claim against either of these Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (although a reviewing court is required to accept pleaded factual allegations as true, it is not required to so accept conclusory statement and legal conclusions).

Advocate and Officer Richardson cannot be cured through amendment, that portion of Claim Seven in which they are sued should be dismissed with prejudice.

Furthermore, that portion of Plaintiff's Claim Five ("(7) placement in S.C.D.M.H. . . . involuntarily") and all of his Claims Six and Eight -- under which he seeks relief from South Carolina's Governor, two city mayors, the Charleston County Sheriff, several state judges and prosecutors, a public defender, MUSC and one of its doctors, and several groups of "taxpayers" for "false incarceration or imprisonment" or "false arrest" or lack of "due process" allegedly arising from his involuntary commitment to SCDMH—are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under applicable law, *Heck* bars any constitutional claim based on the alleged involuntary commitment because there are no allegations that the commitment order was ever set aside or overturned by appeal or otherwise.[11] *See Huff v. Attorney Gen.*, No. 3:07cv744, 2008 WL 4065544, at *5 (E.D. Va. Aug. 26, 2008) (citing to *Wood v. Wood El*, No. Civ.A. 05-1447 RBK, 2005 WL 1899335, at *4 (D.N.J. Aug. 5, 2005) and rejecting a § 1983 challenge to an involuntary civil commitment because the involuntary commitment had not been invalidated as required by *Heck*); *Delaney v. Comm'r of Dep't of Mental Health*, No. 92-12025-MLW, 92-12026-MLW, 1998 WL 113852, at *5 n.3 (D. Mass. Mar. 5, 1998) (noting that *Heck* and *Balisok*

---

[11] As previously noted, *see supra* note 5, the Charleston County on-line court records indicate that the case in which the commitment order was apparently entered, "warrant # K380534, was "disposed" on January 19, 2012 through "nolle prosequi." This fact does not preclude application of *Heck* as a bar to Plaintiff's claims against any Defendant based on their participation in the judicial proceedings that resulted in the commitment order because there is nothing in the Complaint or the available on-line court records to indicate that the case was terminated favorably to Plaintiff. Nolle prosequi pleas are not always entered because of innocence of the charges. **Error! Main Document Only.**See *Stokes v. Moorman*, No. 9:10-1711-CMC, 2010 WL 3862568, at *5 (Aug. 17, 2010) (collecting cases holding that **Error! Main Document Only.**the *Heck* applies when the dismissal of a state criminal case was for purposes other than Plaintiff's innocence of the charges), *report and recommendation adopted by* 2010 WL 3834470 (D.S.C. Sept. 27, 2010), *aff'd*, 406 F. App'x 823 (4th Cir.), *cert. denied*, 180 L. Ed.2d 825, 131 S. Ct. 2994 (2011); *Jackson v. Gable*, No. 0:05-2591-HFF, 2006 WL 1487047, *6 (D.S.C. May 25, 2006).

would bar an award of damages for unlawful civil commitment because such award "would necessarily imply the invalidity of the underlying commitment order"). Plaintiff was previously informed of this bar to similar claims raised in *Odom v. Haley*, No. 3:12-18-RMG-JRM, 2012 WL 1319478, at *3 (Feb. 9, 2012), *report and recommendation adopted*, 2012 WL 1339516 (D.S.C. Apr. 17, 2012). The time for Plaintiff to properly appeal the commitment order to a South Carolina state court that would have had jurisdiction to consider such appeal has long passed. *See* S.C. Code Ann. § 44-17-620 (appeals from mental health-related commitment orders must be filed in the applicable court of common pleas "within fifteen days of the date of the order . . . ."). Additionally, Plaintiff's claims for damages from any Defendant allegedly caused by the order that resulted in his involuntary commitment to SCDMH custody, ECF No. 1 at 2 ("pre-existing condition"); ECF No. 1-5 at 2 (allegations about "rape" by unknown, unnamed SCDMH employees), which relief could only be awarded by reviewing and finding the state commitment order invalid, are barred by the *Rooker-Feldman* doctrine. *See D.C. Ct. of Apps. v. Feldman*, 460 U.S. 462, 476-82 (1983) (a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (same). Moreover, Plaintiff cannot recover damages from judges or prosecutors based on their performance of judicial- or advocacy-related duties. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (judges are immune from civil suit for actions taken in their judicial capacity, unless "taken in the complete absence of all jurisdiction."); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993) (prosecutors are immune from damage suits based on their judicially related "advocate" duties); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his

16

judicial actions."). Plaintiff cannot submit any additional facts through amendment or supplementation of the pleadings now under review that would remove the *Heck*, *Rooker-Feldman*, or absolute immunity bars of his claims based on the Charleston County court's commitment order. Therefore, that portion of Plaintiff's Claim Five that references "false arrest/imprisonment" and "placement in S.C.D.M.H," all of Claim Six, and that portion of Claim Eight that seeks damages from any Defendant based on that Defendant's participation in the court proceedings that led to Plaintiff's commitment to SCDMH custody should be summarily dismissed *with prejudice*.

  C.  Failure to State Plausible Claims

  As Plaintiff has previously been informed, "[a] complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. at 570). The *Iqbal* Court stated further that "[a] claim has facial plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008) (complaint must "answer the basic questions: who, did what, to whom (or with whom), where, and when?"). Additionally, although this court is required to accept pleaded factual allegations as true, it is not required to so accept conclusory statements and legal conclusions. *Iqbal*, 556 U.S. at 678-79.

  Regarding Plaintiff's Claim Two against Defendant Officer Cherry, the only allegations made against Defendant Cherry are that he "allowed" an unnamed, undescribed "civilian" to "assault" Plaintiff in a police cruiser and that Plaintiff suffered serious injuries. These allegations are not sufficient to state plausible § 1983 claims against Officer Cherry based on either

excessive force or failure to protect a detainee because there are no non-conclusory factual allegations from which any subjective intent to harm Plaintiff or any unreasonable behavior by Officer Cherry with respect to the "civilian" can be inferred. *See Graham v. Connor*, 490 U.S. 386, 395-97 (1989) (excessive force; establishing a three-factor consideration for determining whether arresting officer acted objectively unreasonable, which requires a fact-specific analysis of the particular circumstances of the case at hand); *Farmer v. Brennan,* 511 U.S. 825, 835-40 (1994) (failure to protect; officer must know of and disregard substantial risk to detainee's safety); *Wallin v. Dycus*, 381 F. App'x 819, 823 (10th Cir. 2010) (officer must have witnessed the use of excessive force, have had a realistic opportunity to intervene to end it, and have failed to do so). Plaintiff does not allege that Officer Cherry had any pre-existing knowledge or warning that the "civilian" might attack another person in the police car, there are no allegations describing what happened before or during the "assault," *see Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014) (inadequate factual allegations to support excessive force claim); *Sexton v. Hickenlooper*, No. 13-cv-01008-MSK-KMT, 2014 WL 1091936, at *6 (D. Colo. Mar. 19, 2014) (same; defendant must have personal control over situation), and there are no allegations that Officer Cherry had any personal involvement of any kind in the alleged "assault," *see Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights). Furthermore, as far as a state actor's failure to protect a detainee from assault by another person is concerned, Plaintiff's use of the term "allowed" to described Defendant Cherry's response to whatever the "civilian" did to

Plaintiff is much too conclusory for this court to deem sufficient to state a plausible claim. *See Randall v. Prince George's Cnty., Md*., 302 F.3d 188, 204 (4th Cir. 2002) (a plaintiff asserting failure to protect must show that the officer knows about the violation of Plaintiff's person and that he has a reasonable opportunity to prevent the harm, but he chooses not to act); *Whitebey v. Sarrge*, No. 7:11CV00105, 2011 WL 6323134 (W.D. Va. Dec. 16, 2011) (insufficient knowledge of third party's potential for violence to state plausible claim against officer); *see also Danser v. Stansberry*, 772 F.3d 340, 347-48 (4th Cir. 2014) (plaintiff must present facts showing that officer had a "sufficiently culpable state of mind" and knew of third party's propensity for violence against the plaintiff). The lack of factual allegations describing the circumstances surrounding the alleged "assault" make it impossible for this court to determine that Defendant Cherry had the required knowledge of the civilian's propensity for violence or had the means to prevent whatever actions the civilian took against Plaintiff.

Similar pleading inadequacies are present in Plaintiff's Claim Four against the only Defendant referenced therein: Judge Garfinkel. No plausible § 1983 or other federal claim is stated by these allegations because Plaintiff does not allege that this Defendant did anything to him that could approach the level of a constitutional violation. Plaintiff only references a case number ("95DR1005342") and states that "on October 29, 2012" he hand-delivered a "1983 civil action lawsuit" to this Defendant at a certain address in Charleston, South Carolina. He provides no additional facts that would support any inference that Defendant Garfinkel did anything that caused harm to Plaintiff. In absence of substantive allegations of asserted wrongdoing against the named Defendant, there is nothing from which this court can liberally construe any type of plausible cause of action arising from the Complaint.

Plaintiff's allegations in connection with his Claim Five are also inadequate to state

plausible federal claims under § 1983 or otherwise against any Defendant. In that Claim, Plaintiff asks the court to hold many Defendants responsible for things that appear to have been conditions of his confinement somewhere at some point in the past. He states only legal conclusions, using the terms "false arrest/imprisonment," and "involuntary placement in S.C.D.M.H," but he does not include factual allegations to support those conclusions. Plaintiff's broad assertions that he was falsely arrested or imprisoned, placed in a restraint chair or an "incubator" somewhere and possibly subjected to "food as a weapon" and "children touring" the Charleston County Detention Center are "conclusory allegations" and so lacking in details about who did what to whom and when that this court cannot connect any Defendant to any of these alleged conditions. *See Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (even pro se pleadings must contain more than labels and conclusions). It is well settled that federal courts performing their duties of construing pro se pleadings are not required to be "mind readers" or "advocates" for state prisoners or pro se litigants. *See Beaudett v. City of Hampton*, 775 F.2d at 1278; *Gordon v. Leeke*, 574 F.2d at 115.

Also, Plaintiff's Claim Seven—under which he asks for money from "Michael Grant" and "Dollar Tree" for "false arrest for strong arm robbery" and for "defamation of character & false imprisonment;" from Defendant Female Victim Advocate for defamation; and from Officer Richardson for "negligence" "false arrest" and "defamation and slander" and "cruel and unusual punishment, malicious prosecution and deliberate indifference of case 2015A1010201892,"—does not state any plausible federal claim under § 1983 or otherwise. First, there are no allegations from which it can be determined that either of Defendants Grant or Dollar Tree qualifies as a state actor; Plaintiff does not provide any factual details about the alleged "arrest for strong arm robbery" such as dates, places, or about either Defendant Grant's or Dollar Tree's

direct involvement in such arrest, and any claim for "defamation of character" is only a state-law based claim. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (defendant in § 1983 action must be a state actor); *Paul v. Davis*, 424 U.S. 693, 697-710 & nn.3-4 (1976) (defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983). As previously noted with respect to Plaintiff's negligence and malpractice claims against other Defendants, this court cannot consider state-law-based tort claims such as negligence, malpractice, or defamation in absence of diversity jurisdiction, which is not available in this case. As far as the allegations against Defendant Officer Richardson are concerned, Plaintiff makes only legal conclusions about his involvement in the pending strong-arm robbery case and he does not provide any facts that support a reasonable inference that support his assertions of "cruel and unusual punishment, malicious prosecution and deliberate indifference of case 2015A1010201892."

Finally, Plaintiff's allegations against Defendant Officer Tugya at the very end of Claim Eight and in one of Plaintiff's supplemental pleadings (ECF No. 1-5) fail to state a plausible federal claim. This is true because, again, these allegations that Tugya "assaulted" Plaintiff and "fabricated" a warrant, resulting in "false imprisonment" and "malicious prosecution" consist only of legal conclusions completely lacking in factual detail about the alleged "assault" or the "fabrication" or "false arrest" or "malicious prosecution." Also, part of the relief requested: that this federal court direct the state court to "re-open. . . case K380534," cannot be granted. *See Younger v. Harris*, 401 U.S. 37, 44 (1971) (absent extraordinary circumstances, federal courts are not authorized to interfere with a states pending criminal proceedings); *Nivens v. Gilchrist,* 319 F.3d 151, 154-55 (4th Cir. 2003).

Because it is possible that Plaintiff could allege additional facts in another complaint filed in another case that would be sufficient to cure the noted deficiencies, Claims Two, Four, Five

(except for the allegation about involuntary commitment to SCDMH), Seven, and Eight (only to the extent that it seeks damages from Defendant Officer Tugya based on his actions in connection with the pending strong-arm robbery charges) should be dismissed *without prejudice*.

  C.  Warnings to Plaintiff Regarding Future *In Forma Pauperis* Filings

  As noted previously, Plaintiff has filed many non-habeas civil actions in this court. Some of these cases were filed while Plaintiff was incarcerated and some of them were filed when he was considered a "non-prisoner." In each of his cases that progressed past the initial order, Plaintiff was granted *in forma pauperis* status. However, as noted above, Plaintiff continues to file inadequate and repetitive pleadings multiple times over. This requires the court to expend excessive judicial resources to review the pleadings and repeatedly tell Plaintiff why his pleadings are inadequate and why his cases cannot progress further. There comes a point at which a litigant should be required to financially contribute to the court process he or she continues to engage through frivolous and inadequate pleadings. This contribution might be derived through the payment of filing fees for all future cases or through imposition and payment of financial sanctions for frivolous filings.

  As a prisoner, Plaintiff should be warned that he has previously had two "strikes" imposed on him under the Prisoner Litigation Reform Act for frivolous filings. Nos. 3:05-2725-PMD; 2:00-1044-PMD; *see* 28 U.S.C. § 1915(g) (codification of the "three strikes rule."). If Plaintiff continues to file pleadings that attempt to assert claims that this court has often told him are barred (negligence; medical malpractice; involuntary commitment for competency evaluation; and claims against the State of South Carolina, judges, and prosecutors), he risks the imposition of a third and final strike against him for frivolous submissions and the resulting denial of future requests for *in forma pauperis* status unless exceptional circumstances are

shown. This means that, after receiving a third strike, Plaintiff will be required to pay the full filing fee for almost any future non-habeas civil action he might wish to file. *See McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009); *Blakely v. Wards*, No. 11-6945, 2013 WL 5718441 (4th Cir. Oct. 22, 2013). Furthermore, as a non-prisoner, it appears that Plaintiff has a propensity to file frivolous law suits, and that he will continue to pursue such activity, which results in waste of this court's precious judicial resources, unless restrictions are placed on Plaintiff's future submissions to the court. The following civil actions filed by Plaintiff pro se have been summarily dismissed by the court due to frivolity, maliciousness, or failure to state a claim upon which relief may be granted: Nos. 5:14-244-RMG; 5:13-2632-RMG; 3:12-18-RMG; 3:11-365-RMG; 2:10-2376-RMG; 3:10-1818-RMG; 3:09-3271-PMD. As a result, Plaintiff should be admonished that further filing of frivolous, vexational, or delusional law suits in this court may lead to the imposition of sanctions by this court. The sanctions that the court may consider include, but are not limited to, the imposition of a filing injunction order placing restrictions on the types of cases Plaintiff may file and the manner in which they must be submitted; monetary sanctions that will have to be satisfied before any further filings may be made; dismissal of any action; entry of an order of contempt of court; and any and all other forms of sanctions available under Federal Rule of Civil Procedure 11.

IV.     Recommendation

Accordingly, it is recommended that the district court dismiss the Complaint in this case in its entirety. *See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

*It is further recommended that* the dismissals of Claims One, Three, Six, and parts of

Claims Five, Seven, and Eight, as noted above (defamation, involuntary commitment to SCDMH) should be "with prejudice."

*It is further recommended that* the dismissals of Claims Two, Four, and parts of Claims Five, Seven, and Eight, as noted above (Defendants Grant, Dollar Tree, Officer Tugya's activities in connection with the pending strong-arm robbery charge and Tugya's connection to Plaintiff's conditions of confinement at the Charleston County Detention Center), be "without prejudice."

*It is further recommended that* the United States District Judge assigned to this case consider the entry of sanctions against Plaintiff in the future should Plaintiff continue his exhibited tendency to file frivolous, repetitive law suits and to create excessive waste of judicial resources by filing one more frivolous case.

IT IS SO RECOMMENDED.


May 29, 2015                                                  Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).